United States District Court
District of Connecticut
FILED AT NEW HAVEN
1/13 _____ ,20 26
By_____ N. Langello _____
Deputy Clerk

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| |
|---|
| IN THE MATTER OF THE SEARCHES OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL-NUMBER (774) 502-7410 ("TARGET TELEPHONE 1"), THAT IS STORED AT PREMISES CONTROLLED BY VERIZON |

3:26-mj-34 RMS

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Kyle Savo, being duly sworn, depose and state that:

## INTRODUCTION AND AGENT BACKGROUND

1.       I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for federal felony offenses. I am currently employed by the East Haven Police Department, and have been so since October 2017, 2012.  I have been assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO) since July of 2020. During my tenure as a Police Officer and Task Force Officer, I have participated in numerous criminal investigations, including investigations into suspected narcotics trafficking. I am currently assigned to the New Haven District Office, Organized Crime Drug Enforcement Task Force, ("Task Force") which is composed of personnel from the DEA, United State Marshal Service ("USMS"), Connecticut State Police ("CSP"), New Haven Police Department ("NHPD"), West Haven Police Department ("WHPD"), Branford Police Department, ("BPD"), Meriden Police Department ("MPD"), Ansonia Police Department ("APD"), Shelton

Police Department ("SPD"), Naugatuck Police Department ("NPD"), and Waterbury Police Department ("WPD").

2.  I have received instruction relative to conducting drug investigations while attending the Connecticut Police Academy (POSTC) in Meriden, Connecticut, as well as other training classes relative to narcotics trafficking. Over the past approximately eleven years (11) years in law enforcement, I have participated in the execution of search and seizure warrants which have resulted in the seizure of narcotics, United States currency, assets acquired with drug proceeds and assets utilized to facilitate drug activities.

3.  I have participated in numerous investigations involving individuals suspected of distributing illegal drugs, participated in controlled purchases of illegal drugs utilizing cooperating witnesses, confidential sources and undercover agents/Officers, and obtained and coordinated the execution of search and seizure and arrest warrants pertaining to individuals involved in the distribution of illegal drugs. Moreover, I have conducted physical surveillance of individuals involved in illegal drug distribution, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local, state, and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. In the course of my duties, I have assisted state prosecutors in preparing affidavits in support of applications for search and seizure warrants and arrest warrants and have executed numerous search and seizure and arrest warrants. I have supervised the activities of cooperating witnesses who have provided information and assistance in state prosecution of drug offenders. As a result of my training and experience, I am familiar with the manners in which controlled substances are commonly brought to Connecticut, manufactured,

processed, packaged and distributed. I know the relative wholesale and retail value of various types of controlled substances. I am familiar with behaviors, methods and common practices of persons and organizations that illegally transport and distribute controlled substances, as well as the devices commonly utilized by them.

4.      As a result of my training and experience, I am familiar with the manner in which controlled substances are commonly imported, manufactured, processed, packaged and distributed. I know the relative wholesale and retail value of various types of controlled substances. For example, I know that heroin is commonly distributed at the street level in "bundles." A "bundle" consists of ten, single dosage unit bags of heroin that are bundled or packaged together, with each bag containing approximately between .02 and .03 grams of heroin. Single-dosage unit bags are often "stamped" with a brand name that is familiar to a particular distributor's customer base. A "brick" of heroin consists of five (5) "bundles" (i.e., 50 single dosage unit bags). The term "clip" is sometimes used to refer to ten "bundles" of heroin (i.e. 100 single dosage unit bags), and sometimes used to refer to five "bundles" of heroin. Based on my training and experience, I know that narcotics traffickers often use cellular telephones, and often speak to one another using coded, cryptic or slang words and phrases, in the belief that, by doing so, they can thwart the efforts of law enforcement to identify them and their activities and to seize their drugs and/or assets. From my experience, I am familiar with many of the code words and phrases that are frequently used by drug traffickers in the acquisition and distribution of narcotics.

### Purpose of the Affidavit

5.      I submit this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) authorizing the collection of both

historical and prospective location information regarding Verizon cellular telephone assigned phone number (774) 502-7410 ("TARGET TELEPHONE 1 or THE TARGET TELEPHONE") and used by FNU LNU, a.k.a. Jose. TARGET TELEPHONE 1 is further described in Attachment A-1.

6.       Based on my training and experience, I know that Verizon can collect cell-site data about the TARGET TELEPHONE.  I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

7.       The information to be searched is described in the following paragraphs and in Attachment A-1.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require Verizon to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachments B.

8.       Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  See 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  See 18 U.S.C. § 3123(b)(1).

9.       I am currently participating in an investigation into the suspected criminal activity of Mark TOCE, referred to herein as TOCE who I and other law enforcement officer currently believe

is trafficking narcotics distributed through a drug trafficking organization ("DTO").  This individual is based in the greater New Haven County area of Connecticut and may have ties to redistribution networks throughout Connecticut and California.  The affiant and other law enforcement officers are investigating TOCE and others' participation in, and commission of, the following offenses – violations of Title 21, United States Code, Sections 841(a) (possession with intent to distribute and distribution of a controlled substance) and 846 (conspiracy to possess with intent to distribute and to distribute a controlled substance)) (referred to herein as "The Target Offenses").

10.    Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachments A-1 will contain evidence of the Target Offenses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all my knowledge about this matter.

**JURISDICTION**

11.    The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. See 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

12.    On January 13, 2026, Members of the DEA Nebraska and Seward County Sheriff's Office were conducting interdiction stops along Interstate I-80 East near mile marker 379. Investigators observed a blue Nissan Sentra bearing Florida Registration DM43CL registered to EAN Holdings (Enterprise Rental) traveling on Interstate I-80 East.  A traffic stop was conducted where

TFO Kevin Beattie and Special Agent Michael Glover made contact with Mark TOCE (YOB 1980, full date of birth is known to Your Affiant) from 200 Short Beach Road, East Haven, CT. TOCE provided investigators with consent to search for his vehicle where a medium sized black duffle bag was located in the trunk of the vehicle. Investigators stated the black duffle bag was the only object located within the trunk. A search of the duffle bag yielded sixteen (16) brick like objects of suspected narcotics. The bricks were packaged with three different colors of blue, pink, and silver and were all vacuum sealed. A representative sample of the packages were tested with a Trunarc test which tested presumptive positive for the presence of fentanyl.

13.    TOCE was then placed under arrest and transported to the Seward County Task Force Office, located at 2731 Van Dorn Road, Milford, Nebraska. TOCE was advised his notice of rights which he waived and wished to speak with investigators. TOCE advised investigators approximately one week ago he flew from John F. Kennedy (JFK) International Airport to California. TOCE stated when he arrived in California, he attempted to rent a vehicle and was denied due to only having a debit card. TOCE stated he then flew back to JFK and met with "Jose" where he rented the Nissan Sentra from the Branford, Connecticut, Enterprise location. TOCE stated he then drove back west to California where he met with an unknown male and received the duffle bag that contained sixteen (16) kilograms. TOCE advised investigators, prior to leaving for California, "Jose" gave him an Android cellular phone with "Jose's" number (774)-502-7410 (Target Telephone 1) and stored the name "Los Dabarbera".

14.    TOCE provided consent to search for both his personal phone and the Android phone that was provided by "Jose." Investigators observed TOCE would send photographs of his current

location to "Jose."  TOCE was asked what his timeline was to arrive back in Connecticut.  TOCE stated he did not have a timeline and he would call "Jose" when he was back in Connecticut.

15.    Based upon all of the foregoing facts, as well as my training and experience and that of other law enforcement personnel participating in this investigation, there is probable cause to believe the "JOSE" is utilizing TARGET TELEPHONE 1 in furtherance of drug trafficking; therefore, the requested information will help investigators locate the TARGET TELEPHONE, provide direct evidence of drug trafficking, and lead to other evidence of the Target Offenses. When combined with surveillance, the requested information will allow law enforcement to identify the activities of JOSE and his associates and to follow him when he takes the Target Telephone with him to conduct narcotics transactions.

15.    There is also probable cause to believe, as indicated above, that the location information described in Attachment B will constitute evidence of these criminal violations. Specifically, the location information from the TARGET TELEPHONE is likely to lead to the discovery of evidence of drug trafficking activity, including potential stash locations for quantities of narcotics and drug proceeds.

16.    In my training and experience, as well as in conversations with other law enforcement officers familiar with drug trafficking activity, drug traffickers usually carry their cell phone(s) on their person. Their cell phone(s) subsequently are kept on their person when fulfilling narcotics transactions in order to facilitate the meeting, giving them the ability to communicate with the associates they intend to meet with at all times. In addition, their cell phone(s) are used to keep track of the whereabouts of their associates en route to a meet location as well as while their associates are at their stash locations.  Having a cell phone on their person allows them to change the meet location

very quickly, or set a meet location at the last moment, which is often a counter-surveillance ploy. In addition, this allows them to conduct business more efficiently and while on the move even when they visit stash locations or sources of supply. Lastly, having a cell phone on their person also allows a drug trafficker to arrange other transactions while going to one transaction to ensure a consistent flow of business.

**Applicable Cellular Telephone Technology**

17.     Based on my training and experience, I know that mobile phone providers, such as Verizon, have technical capabilities that allow them to collect and generate information about the locations of the mobile phones to which they provide service. Some of this information includes but is not limited to: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records, and (3) Call Detail Records (CDRs).

18.     In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the

telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

19. Based on my training and experience, I know that Verizon can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available.

20. Based on my training and experience, I know that Verizon can collect cell-site data on a prospective basis about TARGET TELEPHONE.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication.   I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

21. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the mobile telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore,

the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

22. Based on my training and experience, I know that telephone companies, like Verizon also collects data about the speed with which signals travel between cellular telephones and cellular towers ("per call measurement data," or "PCMD"). For each cellular telephone accessing its network, providers such as Verizon use PCMD and other data to calculate and record the estimated location of that cellular telephone. T-Mobile refers to the resulting location information as Timing Advanced Information, and/or Timing Advance Report Date ("True Call"). Provider AT&T refers to this information as NELOS (Network Event Location System) and Provider Verizon Wireless refers to this information as RTT (Round-Trip Timing).

23. Based on my training and experience, I know that telephone companies collect Radio Signal Strength Indicators (RSSI) data. RSSI is a measurement of how well a device can hear, detect and receive signals from any wireless access point or Wi-Fi router.

24. Based on my training and experience, I know that telephone companies also collect Media Access Control (MAC) addresses. A MAC address is a unique identifier assigned to a network interface that allows communication on a physical network segment.

25. Finally, I know that telephone companies collect Internet Protocol (IP) address, email address, email logs (without content such as the body of the email or subject lines), website address, servers, usernames, Wi-Fi hotspot locations, Wi-Fi ID history, and IP history location. Because every device that connects to the Internet must use an IP address, IP address information can help to identify location information.

**Historical and Prospective Location Warrants: Authorization Request**

26. Based on the information set forth herein, I believe there is probable cause to believe that "JOSE" is a drug distributor, who works with others to commit the Target Offenses. I also believe that probable cause exists to believe "JOSE" uses Target Telephone 1 in furtherance of his drug dealing. I request that the Court issue the proposed search warrant pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41.

27. I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of Target Telephone 1 on Verizon's network, and at such intervals and times as directed by the government. The government will compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

28. I further request that the Court direct Verizon to disclose to the government any information described in Section 1 of Attachments B that is within its possession, custody, or control. I further request that, pursuant to the preclusion of notice provisions of 18 U.S.C. §§ 2703(b)(1)(A) & 2705(b), the Court order Verizon not to notify any person (including the subscriber or customer to whom the materials relates) of the existence of these applications, the warrants, or the execution of these warrants, for the earlier of one year from the date of the Court's Order or upon notice by the government within 30 days of the conclusion of its investigation, unless the Court extends such period under 18 U.S.C. § 2705(b) Verizon may disclose this Order to an attorney for Verizon for the purpose of receiving legal advice. Non-disclosure is appropriate in this case because the Court's Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the existence of the investigation. There is

accordingly reason to believe that notification of the existence of the Order will seriously jeopardize the investigation including by giving targets an opportunity to destroy evidence, change patterns of behavior, intimidate potential witnesses, or flee from prosecution. See 18 U.S.C. § 2705(b).

29.    I further request that the Court authorize execution of the precision location warrant at any time of day or night, owing to the potential need to locate Target Telephone 1 outside of daytime hours. Because the historical cell-site warrant (Attachments B) will be served on Verizon, who will then compile the requested records at a time convenient to Verizon, reasonable cause exists to permit the extraction of those requested warrants at any time in the day or night as well.

30.    I further request that the Court order that all papers in support of these applications, including the affidavit and search warrants, be sealed until further order of the Court, except that the government may provide the search warrant to Verizon.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

## AUTHORIZATION REQUEST

31.    Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

32.    The proposed warrants will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachments A  for each communication to or from the TARGET TELEPHONE, without geographic limit, for a period of 30 days pursuant to 18 U.S.C. § 3123(c)(1).

33.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the TARGET TELEPHONE on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

34.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until thirty days "after the collection authorized by the warrant has been completed."  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the TARGET TELEPHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachments B, which are incorporated into the warrants, the proposed search warrants do not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrants authorize the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

35.     I further request that the Court direct Verizon to disclose to the government any information described in Section I of Attachments B that is within its possession, custody, or control. Because the warrant will be served on Verizon, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

36.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

KYLE SAVO (Affiliate)
Digitally signed by KYLE SAVO (Affiliate)
Date: 2026.01.13 17:36:17 -05'00'

KYLE SAVO
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Robert M Spector
Digitally signed by Robert M Spector
Date: 2026.01.13 19:10:14 -05'00'

HON. ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (774-502-7410) ("TARGET TELEPHONE 1" or "the TARGET TELEPHONE"), with no listed subscriber, which is believed to be used by "Jose" and that is currently in the custody or control of Verizon, a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Verizon.

## ATTACHMENT B

## Particular Things to be Seized

**I.  Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of Verizon  (including any information that has been deleted but is still available to Verizon or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f)), Verizon is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.  All records and other information (not including the content of communications) relating to wire and electronic communications sent or received by the (774-502-7410) (TARGET TELEPHONE 1) for a period of 15 days prior to the date of the warrant including:

   1.  The date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   2.  Information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

   3.  Information regarding True Call Timing Advance data.

   4.  Information regarding Historical Timing Advance data

b.  Information associated with each communication to and from TARGET TELEPHONE 1 for a period of 30 days forward from the date of this warrant, including:

   1.  Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

   2.  Source and destination PHONE numbers;

   3.  Date, time, and duration of communication; and

   4.  All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which TARGET TELEPHONE 1 will connect at the beginning and end of each communication as well as per-call measurement data (also known as True Call Timing Advance Data).

c.  Information about the location of TARGET TELEPHONE 1 for a period of 30 days during all times of day and night.  "Information about the location of TARGET TELEPHONE 1" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information to include True Call Timing Advance data.

1.  To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon, Verizon is required to disclose the Location Information to the government.  In addition, Verizon must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of TARGET TELEPHONE 1 on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

2.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

d.  This warrant does not authorize the seizure of any tangible property or the contents of any communications.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. § 846 (conspiracy to commit narcotics trafficking offenses) and 21 U.S.C. § 841(a)(1) (distribution of controlled substances)  (referred to herein as "The Target Offenses") involving the members of the conspiracy during the 30-day period from the date of the warrant.